# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 15-CV-987 (JFB) (ARL)
_____

AKOUSA AGYEMAN,

Plaintiff,

VERSUS

ROOSEVELT UNION FREE SCHOOL DISTRICT, ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
June 5, 2017
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff elementary school teacher Akousa Agyeman ("Agyeman" or "plaintiff") brings this civil rights action against her employer, the Roosevelt Union Free School District (the "District"), as well as the Board of Education of Roosevelt Union Free School District (the "Board"), Dr. Deborah L. Wortham, Dr. Dionne Wynn, Ronald Grotsky, Nataesha McVea, and Jeremiah Sumter (collectively, "defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York Civil Service Law § 75-b. She alleges that defendants violated her rights under the First Amendment and retaliated against her for engaging in various forms of protected speech.

Defendants now move for summary judgment. For the reasons set forth below, the Court grants the motion with respect to plaintiff's Section 1983 claim, and the Court declines, in its discretion, to exercise supplemental jurisdiction over the remaining New York State law claim, which it dismisses without prejudice to re-filing in state court.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' Rule 56.1 statements ("Defs.' 56.1," ECF No. 43; "Pl.'s 56.1," ECF No. 47), as well as the parties' affidavits and exhibits. Unless otherwise noted, the facts are either undisputed or uncontroverted by admissible evidence. Upon consideration of the motion for summary judgment, the Court will construe the facts in the light most favorable to plaintiff as the nonmoving party, and it will

1

resolve all factual ambiguities in her favor. *See Capobianco v. New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2001).

1. Plaintiff's Assignment Transfer

Plaintiff was first hired by the District in 1999. (Defs.' 56.1 ¶ 1.) In September 2013, plaintiff wrote an email to defendant District Director of Pupil Personnel Services Dr. Dionne Wynn ("Dr. Wynn") expressing concerns about her recent assignment transfer from Special Education Lead Teacher/ Resource Room Teacher to Self-Contained Teacher. (*Id.* ¶ 2; Defs.' Exh. C, ECF No. 45-3.) Plaintiff said that "[a]lthough [her] work on both a building and district level ha[d] been extensive in the area of special education . . . [her] suggestions and request for leadership roles and initiatives continue[d] to be overlooked and denied." (Defs.' Exh. C.) In addition, that same month, plaintiff wrote a letter to defendant District Superintendent Dr. Deborah L. Wortham ("Dr. Wortham") regarding the transfer to ask about returning to her prior assignment and to seek consideration for Special Education Coordinator positions that were available. (Defs.' 56.1 ¶¶ 3-4; Defs.' Exh. D, ECF No. 45-4.)

Plaintiff believed that her assignment transfer violated the terms of her union's collective bargaining agreement, and she subsequently requested a meeting to discuss her transfer and the services she was then being asked to assume as a result of the new assignment. (Defs.' 56.1 ¶¶ 6-7.) On October 4, 2013, plaintiff met with Dr. Wynn, defendant District Assistant Superintendent Ronald Grotsky ("Grotsky"), and Jeff Pullin, the President of the District Teachers Association. (*Id.* ¶¶ 8-9; Defs.' Exh. F, ECF No. 45-7.) Plaintiff was concerned at that time that her assignment transfer would mean that she would no longer provide services to the students to whom she had previously been assigned. (Defs.' 56.1 ¶ 11.)

After the meeting, plaintiff wrote a follow-up letter to Grotsky dated October 6, 2013 in which she mentioned her application for a vacant position; alleged violations of various New York State statutes and the collective bargaining agreement between the District and plaintiff's union as a result of the assignment transfer; and alleged unlawful changes to District students' Individualized Education Plans ("IEPs"). (*Id.* ¶¶ 13-16; Defs.' Exh. F.)

2. Plaintiff's E-mail Correspondence

Following the October 4, 2013 meeting, plaintiff sent several e-mails contesting her assignment transfer and expressing concerns about various District policies and practices. (Defs.' 56.1 ¶ 28.) For example, in an e-mail to Dr. Wynn and others dated January 13, 2014, plaintiff stated that the District had failed to schedule Committee on Special Education ("CSE") meetings that had been requested and said that the "denial of procedural requirements prohibit[ed] the opportunity to provide necessary access to education programs and facilities . . . ." (Defs.' Exh. H, ECF No. 45-9.)

On January 30, 2014, plaintiff sent another e-mail to, *inter alia*, Dr. Wynn and defendant District Principal Nateasha McVea ("McVea") expressing her concerns regarding a student's reentry into the classroom after returning from home instruction and stating that the District had not followed protocol and regulations by permitting the student to return without any meeting, intervention, or plan of action. (Pl.'s 56.1 ¶ 117; Defs.' Exh. J, ECF No. 45-11.) Plaintiff testified that, on that same day, Dr. Wynn and defendant District Assistant

Principal Jeremiah Sumter ("Sumter") pulled her out of her classroom, reprimanded her in front of a student, and later charged her with insubordination. (Defs.' 56.1 ¶ 23.)

On March 21, 2014, plaintiff e-mailed Dr. Wynn and McVea and expressed concerns regarding District administration of New York State education assessments. (Pl.'s 56.1 ¶ 116; Defs.' Exh. I, ECF No. 45-10.) Subsequently, on March 28 and March 31, 2014, plaintiff sent e-mails to Dr. Wynn, McVea, Sumter, and others regarding the treatment of a particular student by plaintiff's co-workers and the administration of that student's IEP. (Pl.'s 56.1 ¶ 118; Defs.' Exh. K, ECF No. 45-12.) Thereafter, on April 14, 2014, plaintiff sent an e-mail regarding whether plaintiff and other teachers would be provided time during the school day to prepare for annual student review meetings. (Defs.' 56.1 ¶ 29.) The following day, plaintiff e-mailed Dr. Wynn, McVea, and others and said that the District had failed to address teachers' concerns with reference to a student's current status, placement, and IEP, and plaintiff said that the teachers wanted "to absolve all responsibility for the current status and or decision making for this student." (Pl.'s 56.1 ¶ 120; Defs.' Exh. L, ECF No. 45-13.)

3. Plaintiff's April 11, 2014 Letter

In a letter dated April 11, 2014[1] (the "April 11, 2014 Letter") and sent to two separate offices within the New York State Education Department—the office of Special Education Quality Assurance ("SEQA") and the Office of State Assessment—plaintiff stated that she had "an obligation and duty to notify the proper authorities on the inconsistencies and negligence of the [D]istrict to ensure that all students were provided and received mandated accommodations as noted on their IEP for the 2014" New York State education assessment. (Defs.' 56.1 ¶ 38; Pl.'s 56.1 ¶ 122; Defs.' Exhs. M and N, ECF Nos. 45-14 and 45-15.) Plaintiff said that the District had failed to respond to her complaints and stated that, although she was "very concerned of [sic] [D]istrict's familiar 'malice tactics' of retaliation especially to whistle blowing (as [she] ha[d] already encountered many instances thus far) [she was] very concerned about the rights of the students [she] serve[d]." (Pl.'s 56.1 ¶ 122; Defs.' Exhs. M and N.) The April 11, 2014 Letter sent to SEQA is stamped as having been received on April 23, 2014 (Defs.' Exh. M), and in correspondence dated May 1, 2014, an investigator from the New York State Education Department indicated that the Department had received the April 11, 2014 Letter on April 21, 2014 (Defs.' 56.1 ¶ 48).

Plaintiff testified that she also sent a copy of the April 11, 2014 Letter to the District. (*Id.* ¶ 36.) However, she does not know who might have received that correspondence. (*Id.* ¶ 45.) Further, she said that the copy of the April 11, 2014 Letter sent to the District was addressed to 315 Wagner Place, Roosevelt, New York 11757, but plaintiff admits that (1) the correct address at the time for the District office was 240 Denton Place, Roosevelt, New York 11571; and (2) at no point in 2014 was 315 Wagner Place an address associated with a District office, school, or other property. (*Id.* ¶¶ 41-43.) Neither copy of the April 11, 2014 Letter sent to the New York State Education Department indicates that plaintiff e-mailed that correspondence to the District. (*Id.* ¶ 44.) Plaintiff also did not inform anyone at the District that she was planning to send a letter

---

[1] Plaintiff testified that she does not recall when she wrote this correspondence. (Defs.' 56.1 ¶ 30.)

to the New York State Education Department. (*Id*. ¶ 49.)

By letter dated May 1, 2014, the New York State Education Department informed the District that it had received plaintiff's April 11, 2014 Letter on April 21, 2014 and would be investigating her allegations. (*Id*. ¶ 94.)

4. Investigation of Plaintiff

On April 21, 2014, plaintiff reported to work and was due to enter her class grades into the District computer system. (*Id*. ¶ 50.) Plaintiff later represented that she was unable to do so because of computer issues. (*Id*. ¶ 51.) On that day, plaintiff informed Chris Repetti ("Repetti") of the District's Technology Department that files had been deleted from her computer. (*Id*. ¶ 52.) As a result, Repetti remotely accessed plaintiff's computer and found a very sparse desktop with three icons and no start menu. (*Id*. ¶ 53.) Repetti then accessed the file system on the same computer and found that plaintiff's desktop folder was missing. (*Id*. ¶ 54.) He learned that plaintiff had saved all missing data to her desktop computer rather than the District's network, which potentially made recovery of the data very difficult, and further investigation revealed that there were data located in the computer's recycle bin that appeared to belong to plaintiff, indicating that the data had been deleted manually by someone sitting at the computer. (*Id*. ¶¶ 55-56.) The bulk of the data had been deleted on two dates: Friday April 4, 2014, between 8:30 p.m. and 9:00 p.m.; and April 11, 2014, between 10:00 p.m. and 11:00 p.m. (*Id*. ¶ 57.)

Plaintiff confirmed for Repetti that the data located in the computer recycle bin were the missing files. (*Id*. ¶ 58.) Repetti then physically accessed plaintiff's computer and recovered all data to her new profile, as well as to the network. (*Id*. ¶¶ 59-60.) Thereafter, Repetti printed a report showing when a particular user logs on, unlocks, or logs off of any computer on the District's network. (*Id*. ¶ 62.) The report established that plaintiff's account had been used to log on to her computer at 8:30 p.m. on April 4, 2014 and to unlock the same computer on April 11, 2014 at 9:58 p.m., indicating that someone had been physically sitting at plaintiff's computer at those times. (*Id*. ¶ 63.) Repetti then reviewed security footage from those dates and times, and he found that at approximately 8:20 p.m. on April 4, 2014 and at 9:54 p.m. on April 11, 2014, plaintiff entered the school and proceeded to her classroom. (*Id*. ¶ 64.) Repetti provided these findings, including copies of the security footage, to Grotsky. (*Id*. ¶ 65.) Grotsky then communicated this information to Dr. Wortham and District counsel. (*Id*. ¶ 66.) After being informed of Repetti's findings, the Board and Dr. Wortham met with District counsel and agreed that further investigation was necessary. (*Id*. ¶ 67.)

As part of that investigation, Dr. Wortham reviewed the security footage with District counsel. (*Id*. ¶ 68.) The videos showed plaintiff being let into the school building by District employee David Dillon ("Dillon") on April 4, 2014 at approximately 8:20 p.m. with a child identified as plaintiff's daughter. (*Id*. ¶¶ 69, 80.) At approximately 8:48 p.m., Rich Adams ("Adams")—the father of plaintiff's daughter and an individual employed as a cleaner at another District school—entered the school building. (*Id*. ¶ 70.) Adams then went to plaintiff's classroom where he remained until approximately 9:38 p.m. (*Id*.) At around 11:43 p.m., another individual entered plaintiff's classroom, and about five minutes later, plaintiff, her daughter, and that individual left the classroom. (*Id*. ¶ 71.)

4

Video footage also depicted Dillon allowing plaintiff into the same District school building on April 11, 2014 at approximately 9:54 p.m. (*Id*. ¶ 72.) Plaintiff then entered her classroom, where she remained until about 11:30 p.m. (*Id*. ¶ 73.) A few minutes later, plaintiff allowed Adams into the building, and the two then entered plaintiff's classroom. (*Id*. ¶¶ 74-75.) Adams and plaintiff left the classroom at approximately 11:49 p.m. and 11:56 p.m., respectively. (*Id*. ¶¶ 76-77.) The District interviewed Dillon on April 27, 2014, and he confirmed that he had allowed plaintiff into the school building on those dates and that he had seen plaintiff's daughter and Adams in the building on those dates. (*Id*. ¶¶ 79-83.)

Based on the review of plaintiff's computer and the security footage, the District determined that further investigation was warranted and also decided to place plaintiff on home leave with pay. (*Id*. ¶¶ 86-87.) On May 2, 2014, plaintiff met with Grotsky and her union president to discuss the matter. (*Id*. ¶ 89.) At that meeting, plaintiff was informed that she was being assigned to home pending the completion of the investigation. (*Id*. ¶ 90.)

Following the conclusion of the District's investigation, plaintiff was asked by letter dated May 12, 2014 to meet with Grotsky the following day. (*Id*. ¶ 102.) That meeting was moved to May 14, 2014 at plaintiff's request. (*Id*. ¶ 103.) At that meeting, plaintiff was presented with a May 13, 2013 counseling memorandum signed by Dr. Wortham and setting forth the results of the District's investigation (the "Counseling Memo"). (*Id*. ¶ 104.) The Counseling Memo indicated, among other things, that on two occasions— the evenings of April 4 and April 11, 2014— plaintiff had been present in her classroom with another District employee for an extended period of time notwithstanding that employee's assignment to another District facility, and it stated that this violated District policies regarding staff access and school visitors. (*Id*. ¶ 105.) The Counseling Memo also stated that plaintiff was free to return to work on May 16, 2014 and that plaintiff should not construe the Counseling Memo as "discipline"; however, it did not "rule out formal disciplinary action regarding this matter should [Dr. Wortham's] expectations for [plaintiff's] future conduct . . . not be met," and Dr. Wortham said that the Counseling Memo would be placed in plaintiff's personnel file. (*Id*. ¶¶ 106-07; Defs.' Exh. AA, ECF No. 45-28.) Plaintiff was provided with an opportunity to submit a response to the Counseling Memo, which she did on May 14, 2014, and Dr. Wortham sent plaintiff a reply on May 20, 2014. (Defs.' 56.1 ¶¶ 108-10.)

B. Procedural History

Defendants removed this action from New York State court on February 25, 2015. (ECF No. 1.) Plaintiff then filed an amended complaint on April 27, 2015. (ECF No. 12.) Defendants moved to dismiss that pleading on June 23, 2015 (ECF No. 14); plaintiff filed her opposition on September 10, 2015 (ECF No. 20); and defendants replied on September 23, 2015 (ECF No. 22). The Court held oral argument on January 5, 2016 (ECF No. 25), and in a bench ruling on January 11, 2016, the Court dismissed plaintiff's Equal Protection and 42 U.S.C. § 1985 claims, as well as plaintiff's Section 1983 First Amendment claim against McVea, but denied defendants' motion in all other respects (ECF Nos. 26-27).

Thereafter, on February 3, 2017, defendants moved for summary judgment on plaintiff's remaining Section 1983 and New York State law claims. (ECF No. 42.) Plaintiff filed opposition papers on April 19, 2017 (ECF No. 50), and defendants

5

submitted their reply on May 3, 2017 (ECF No. 52). The Court held oral argument on May 17, 2017 (ECF No. 54) and has fully considered the parties' submissions.

## II. STANDARD OF REVIEW

The standard for summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Rule 56(c)(1) provides that a

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Defendants argue that they are entitled to summary judgment on plaintiff's Section 1983 claim on the following grounds: (1) the speech at issue is not protected under the First Amendment; (2) plaintiff was not subjected to an adverse employment action prior to being placed on home leave in May 2014; and (3) there is no causal link between the April 11, 2014 Letter speech and the alleged subsequent adverse employment actions.

As set forth below, the Court agrees with defendants' first argument and concludes that neither plaintiff's e-mail correspondence nor her April 11, 2014 letter constitute protected speech. As a result, the Court determines that defendants are entitled to summary judgment on plaintiff's Section 1983 claim, and it declines, in its discretion, to exercise supplemental jurisdiction over the remaining New York State law claim, which the Court dismisses without prejudice to re-filing in state court.

A. Section 1983 Claim

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).[2] For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

Here, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether defendants' conduct deprived plaintiff of the rights she asserts under the First Amendment. Specifically, plaintiff claims that defendants retaliated against her for (1) sending e-mails to District employees contesting District policies and procedures that she alleged were in violation of law; and (2) sending the April 11, 2014 Letter to the New York State Education Department.

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where, as here, a public employee brings a retaliation claim based on the First Amendment, plaintiff must put forth evidence that demonstrates the following in order to establish a *prima facie* case: "(1) [she] engaged in constitutionally protected speech because [she] spoke as [a] citizen[] on a matter of public concern; (2) [she] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008). However, defendants may still "escape liability if they can demonstrate that either (1) [they] would have taken the same adverse action against the

---

[2] Specifically, Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

7

plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." *Id.* This is known as the "*Pickering* balancing test" and is a question of law for the Court. *See Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) (referring to *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Even if defendants prevail on the *Pickering* test, plaintiff may still succeed by showing that the adverse action was in fact motivated by retaliation and not by any fear of a resultant disruption. *See Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006).

For the reasons set forth below, and after careful consideration of the record under the applicable summary judgment standard, the Court concludes that plaintiff is unable to establish a *prima facie* retaliation claim as a matter of law. Specifically, the Court concludes that the speech at issue—namely, plaintiff's e-mail correspondence and the April 11, 2014 Letter—is not protected by the First Amendment because plaintiff was speaking as a public employee, and not as a private citizen.[3] Accordingly, the Court grants defendants' motion for summary judgment on plaintiff's Section 1983 claim.

1. Protected Speech

As the Second Circuit has emphasized, "[i]t is established law in this Circuit that, '[r]egardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.'" *Sousa v. Roque*, 578 F.3d 164, 169-70 (2d Cir. 2009) (quoting *Williams*, 535 at 76). More specifically, "[t]o determine whether or not a plaintiff's speech is protected, a court must begin by asking 'whether the employee spoke as a citizen on a matter of public concern.'" *Id.* at 170 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). It is critical to note that this test contains two separate criteria: (1) that the employee speak as a citizen; and (2) that the employee speak on a matter of public concern. If plaintiff fails to satisfy either requirement, then plaintiff's First Amendment retaliation claim must fail as a matter of law. *See id.* ("If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'" (quoting *Garcetti*, 547 U.S. at 418)).[4]

In *Garcetti*, the Supreme Court clarified that in determining whether the speech at issue is constitutionally protected, a court must first decide whether the plaintiff was

---

[3] As a result, the Court need not, and does not, address defendants' additional arguments that (1) plaintiff did not suffer an adverse employment action prior to May 2014 and failed to establish a causal link between such action and her speech; and (2) there is no causal link between the April 11, 2014 Letter and any subsequent adverse employment actions.

[4] In *Sousa*, the Second Circuit reiterated that "a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern." 578 F.3d at 170. Thus, the Court held that "the District Court erred in its determination in this case that Sousa's speech did not address a matter of

public concern because he was motivated by his employment grievances." *Id.* at 174. Instead, "[w]hether or not speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record, and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Id.* at 175 (citations omitted). However, this Court need not address the "matter of public concern" requirement in the instant case because the undisputed facts demonstrate as a matter of law that plaintiff was not speaking as a citizen, but rather as an employee pursuant to her official duties.

speaking as a "citizen," rather than as a public employee. *Id.* at 421. "If the answer is 'no,' then no First Amendment claim arises, and that ends the matter." *Caraccilo v. Vill. of Seneca Falls*, 582 F. Supp. 2d 390, 405 (W.D.N.Y. 2008). The Court explained that

> [r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Garcetti*, 547 U.S. at 421-22. By expressly holding that speech pursuant to a public employee's official duties is not insulated from employer discipline, *Garcetti* emphasized that "before asking whether the subject-matter of particular speech is a topic of public concern, [a] court must decide whether the plaintiff was speaking 'as a citizen' or as part of [his] public job." *Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006); *see also Benvenisti v. City of N.Y.*, No. 04-CV-3166 (JGK), 2006 WL 2777274, at *7 (S.D.N.Y. Sept. 23, 2006) ("First, the Court must determine whether the plaintiff was speaking as a 'citizen' for First Amendment purposes. After that, the Court must turn to the traditional [*Connick v. Myers*, 461 U.S. 138 (1983)] analysis and ask whether, viewing the record as a whole and based on the content, context, and form of a given statement, the plaintiff's speech was made as a citizen upon 'matters of public concern.'" (citations omitted)).

However, *Garcetti* did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." 547 U.S. at 424. In that case, there was no dispute that the plaintiff, a deputy district attorney with certain supervisory responsibilities over other lawyers, wrote the memorandum at issue pursuant to his employment duties. *Id.* at 421. Although the Supreme Court did not set forth specific criteria for determining when speech is made pursuant to an employee's officials duties, it instructed that the inquiry "is a practical one[,]" because "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti*, 547 U.S. at 424-25. It also noted that speech by a public employee retains some possibility of First Amendment protection when it "is the kind of activity engaged in by citizens who do not work for the government." *Id.* at 423. To illustrate its point by way of comparison, *Garcetti* "also list[ed] examples of prototypical protected speech by public employees, namely 'mak[ing] a public statement, discuss[ing] politics with a coworker, writ[ing] a letter to newspapers or legislators, or otherwise speak[ing] as a citizen.'" *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (quoting *Spiegla v. Hull*, 481 F.3d 961, 967 (7th Cir. 2007)).

Since *Garcetti*, lower courts have developed more guidelines for determining whether speech is made pursuant to a public employee's official duties. Although none of the following factors are dispositive, they may be considered by the Court: "the plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment." *Caraccilo*, 582 F. Supp. 2d at 405. As indicated by *Garcetti*, two relevant criteria are whether the speech occurs in the workplace and whether the speech concerns the subject matter of the employee's job. *See*

547 U.S. at 420-21; *accord Abdur-Rahman v. Walker*, 567 F.3d 1278, 1282 (11th Cir. 2009). Again, "[a]lthough there is no simple checklist or formula by which to determine whether the employee was speaking as a private citizen or as a public employee . . . 'the cases distinguish between speech that is the kind of activity engaged in by citizens who do not work for the government and activities undertaken in the course of performing one's job.'" *Caraccilo*, 582 F. Supp. 2d at 410 (quoting *Davis*, 518 F.3d at 312-13).[5]

a. Plaintiff's E-mails

The Court concludes that, as a matter of law, plaintiff's e-mails to various District employees, including Dr. Wynn and McVea, are not protected speech because plaintiff spoke as a public employee, and not as a private citizen.

Although defendants have not pointed to an official policy that requires a teacher to report such incidents, the Second Circuit has made clear that "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010). In *Weintraub*, a public school teacher complained to his supervisor and filed a grievance with his union regarding how a student was not properly disciplined. *Id.* at 199. The Second Circuit held the teacher's speech was not protected under *Garcetti* because he spoke as an employee, and not as a citizen for First Amendment purposes. *Id.*

at 203. In reaching this decision, the Court emphasized that the teacher's grievance implicated his official responsibilities because it was "'part-and-parcel of his concerns' about his ability to 'properly execute his duties,' as a public school teacher—namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning.'" *Id.* at 203 (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)). Likewise, in *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66, 68 (2d Cir. 2008), the Second Circuit affirmed summary judgment to the defendants on the plaintiff's First Amendment claim because the plaintiff's "communications regarding [a student] and the lack of physical education and art classes at the [school] were made pursuant to her 'official duties' as a special education counselor, in which capacity she was responsible for monitoring her students' behavior, needs, and progress."

Here, plaintiff argues that she "was truly concerned about the needs of disabled students" and that her e-mails "were not made in furtherance of her job duties and did not implicate her ability to do her job." (Pl.'s Opp'n Br., ECF No. 50, at 5.) She also claims that the "record indicates [that] not all of plaintiff's concerns even concerned her. Many of them concerned fellow teachers." (*Id.*) However, to the contrary, the record and the case law demonstrate that plaintiff indisputably spoke as a public employee in her internal e-mails complaining about student discipline, the conduct of other teachers and District personnel, and the lack of resources and support; and alleging

---

[5] To the extent that it is unclear whether this issue is a question of law for the Court or a mixed question of law and fact in part for a fact-finder, the Second Circuit has said that "[w]hether the employee spoke solely as an employee and not as a citizen is . . . largely a question of law for the court." *Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011). Here, the issue of whether plaintiff spoke as a citizen or a public employee is clearly a matter of law for the Court because no factual disputes exist in this case regarding the underlying content of plaintiff's speech, her job responsibilities, or the other relevant factors.

10

violations of law and District policies and procedures. As defendants note in their brief, courts have routinely and correctly held that such subject matter involves a public school teacher's professional duties. *See, e.g.*, *Woodlock*, 281 F. App'x at 68; *Hicks v. Benton Cty. Bd. of Educ.*, No. 14-CV-1345, 2016 WL 7028954, at *10 (W.D. Tenn. Dec. 1, 2016), *reconsideration denied*, 2017 WL 421927 (W.D. Tenn. Jan. 31, 2017) ("The Court finds that the Plaintiff's statements to parents concerning the special education program at Big Sandy were part of her official duties and, therefore, not protected by the First Amendment."); *White v. City of New York*, No. 13-CV-7156 (ER), 2014 WL 4357466, at *11 (S.D.N.Y. Sep. 3, 2014) (dismissing First Amendment retaliation claim because the "[p]laintiff's speech pertaining to the location and scheduling of the services for her special education students clearly falls within the scope of her professional duties"); *Stahura-Uhl v. Iroquois Cent. Sch. Dist.*, 836 F. Supp. 2d 132, 142 (W.D.N.Y. 2011) (dismissing First Amendment retaliation claim because the plaintiff's "complaints to co-workers and parents cannot be reasonably categorized as falling outside her official duties. It takes no standardized employee handbook or directive from the School District for this Court to conclude that in addition to instructing her students, a teacher should also advocate on their behalf. This includes communicating with other teachers when concerned about a student's progress . . . ."); *Massaro v. Dep't of Educ.*, No. 08 Civ. 10678 (LTS) (FM), 2011 WL 2207556, at *3 (S.D.N.Y. June 3, 2011) (holding that the plaintiff's "complaints regarding the sanitary conditions in her classroom and the health concerns that arose from them were made pursuant to her duties as an employee"), *aff'd sub nom. Massaro v. N.Y. City Dep't of Educ.*, 481 F. App'x 653 (2d Cir. 2012); *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 207 (E.D.N.Y. 2009) ("The substance of Plaintiff's complaints concerning the lack of sufficient educational and instructional resources and the appropriateness of the counseling curriculum are matters relating to [the plaintiff's] own job responsibilities as an educator and school psychologist, and therefore is unprotected speech."). This authority makes clear that ensuring proper student discipline and obtaining the resources and support necessary to fulfill plaintiff's duties are "indispensable prerequisite[s] to effective teaching and classroom learning." *Weintraub*, 593 F.3d at 203. Moreover, because plaintiff alleged in her e-mails that the District had violated applicable law, she acted as a public employee who "air[ed] a complaint or grievance, or expresse[d] concern about misconduct . . . ." *Weintraub v. Bd. of Educ. of City of N.Y.*, 489 F. Supp. 2d 209, 219, *aff'd* 593 F.3d at 196.

In addition, the fact that plaintiff sent her e-mails to other District employees as internal correspondence and did not publicize her concerns weighs in defendants' favor. *See, e.g.*, *Massaro*, 481 F. App'x at 655-56 (holding that "the district court's conclusion that [the plaintiff] spoke as an employee rather than a private citizen is supported by the facts that she aired her complaints only to several school administrators rather than to the public . . . ."); *McGuire v. City of N.Y.*, No. 12-CV-814 (NGG) (PK), 2015 WL 8489962, at *7 (E.D.N.Y. Dec. 8, 2015) ("Second, [the plaintiff's] speech was made through official channels. Courts in this circuit have found, that where an employee speaks only through official channels, rather than publicly, they are more likely to be speaking as an employee."); *Anglisano v. N.Y. City Dep't of Educ.*, No. 14-CV-3677 (SLT) (SMG), 2015 WL 5821786, at *7 (E.D.N.Y. Sept. 30, 2015) ("While plaintiff asserts that she was acting as a 'private

citizen,' the fact that she spoke only to her direct supervisor and to the principal belies this conclusory assertion.").

Lastly, the third factor—whether the speech resulted from knowledge gained through plaintiff's employment—also favors defendants. It is clear from the content of plaintiff's e-mails, which discuss student discipline, IEPs, District procedures, and resource allocation, that plaintiff "was only able to complain about [the District's] acts because of the information she obtained as a public employee." *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101 (JFB) (ETB), 2012 WL 1077677, at *14 (E.D.N.Y. Mar. 30, 2012).

In the face of this clear and consistent case law, plaintiff was unable, in either her brief or at oral argument, to cite a single decision holding that speech analogous to the e-mails at issue here is protected under the First Amendment. Thus, pursuant to *Garcetti* and its progeny, the undisputed facts of this case demonstrate that plaintiff was speaking as a public employee, rather than as a private citizen, in her internal correspondence to District employees. *See Nadolecki v. William Floyd Union Free Sch. Distirct*, No. 15-CV-2915 (JMA) (AYS), 2016 WL 4768823, at *6 (E.D.N.Y. July 6, 2016) (holding that the "plaintiff's complaints . . . were all pursuant to his official duties as a teacher" because "he made complaints regarding the reading program, integration of classes, the math curriculum, special accommodations and services having to do with student IEPs, and the effects that scheduling cuts would have on his math class"), *report and recommendation adopted*, 2016 WL 4766268 (E.D.N.Y. Sept. 13, 2016).

b. The April 11, 2014 Letter

For substantially the same reasons discussed above, the Court concludes that the April 11, 2014 Letter is not protected speech. Plaintiff argues that "she was motivated by a desire to protect others and to bring defendants' alleged wrongdoing to light," rather than "by her own personal grievances." (Pl.'s Opp'n Br. at 5.) In addition, she contends that the April 11, 2014 Letter

> had a "civilian analogue" that is a private citizen could have engaged in the same type of speech. Anyone could have filed the complaint to the State Education Department. That was not dependent on plaintiff's status as a public employee. Plaintiff's speech was not within the confines of an employee grievance procedure, which only an employee could pursue . . . .

(*Id*. at 6 (citation omitted).)

However, as established by the case law summarized above, plaintiff's decision to report "inconsistencies and negligence of the [D]istrict to ensure that all students were provided and received mandated accommodations as noted on their IEP for the 2014" (Defs.' Exhs. M and N) "was directly related to her responsibilities as a teacher" because "[r]eporting a violation of state law to ensure the welfare of students is a duty of a teacher, and 'in furtherance of the execution of one of her core duties,'" *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 16-CV-3809 (JBW), 2017 WL 448603, at *8 (E.D.N.Y. Feb. 2, 2017) (quoting *Weintraub*, 593 F.3d at 203). Further, plaintiff acknowledged in the April 11, 2014 Letter that she had "an obligation and duty to notify the proper authorities" of her complaints (Defs.' Exhs. M and N), and such

an admission supports a finding that she acted as a public employee, *see, e.g.*, *Ross v. N.Y. City Dep't of Educ.*, 935 F. Supp. 2d 508, 520 (E.D.N.Y. 2013) ("But more importantly, Plaintiff himself testified repeatedly that he filed the OSHA complaint *because of* his duties as an educator."); *McNamee v. Cty. of Allegheny*, No. CIV.A. 05-1536, 2007 WL 2331878, at *8 (W.D. Pa. Aug. 13, 2007) (finding that plaintiff's letter complaint to the Department of Health was not protected speech because, *inter alia*, plaintiff acknowledged in her deposition that she made the complaint pursuant to her official duties).

The fact that plaintiff sent the April 11, 2014 to recipients outside of her direct chain-of-command, to the New York Education Department, does not alter this Court's conclusion given all of the facts in this case. Even assuming that plaintiff is correct that "anyone could have engaged in the same type of speech" by sending a similar letter to the New York State Education Department, that would not be dispositive. Under *Garcetti*, the critical inquiry is whether plaintiff's "speech 'owe[d] its existence to [her] professional responsibilities' as a teacher, and as such, is unprotected." *Stahura-Uhl*, 836 F. Supp. 2d at 142 (quoting *Garcetti,* 547 U.S. at 421-22). In this case, plaintiff's repeated statements "regarding *why* [s]he contacted" the New York State *Education* Department—and not any other public agency or official—"and the *content* of [her] complaint shed the most light on the 'central issue' in this case: the 'perspective of the speaker.'" *Ross*, 935 F. Supp. 2d at 522 (quoting *Weintraub*, 593 F.3d at 204). By its own terms, the purpose of the April 11, 2014 Letter was "to ensure that all [District] students were provided and received mandated accommodations as noted on their IEP for the 2014" New York State education assessment. (Defs.' Exhs. M and N.) "[T]aken together, all of these undisputed facts paint a clear picture of an employee speaking out about [her] views regarding how best to perform [her] job duties, rather than of someone attempting to make a 'contribution[] to the civic discourse.'" *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 507 (E.D.N.Y. 2011) (quoting *Garcetti*, 547 U.S. at 422.) "Far from resembling anything close to 'activity engaged in by citizens who do not work for the government[,]'" *id.* (quoting *Garcetti*, 547 U.S. at 423), "plaintiff's speech was rather 'a means to fulfill [her] employment requirements,'" *id.* (quoting *Renken v. Gregory*, 541 F.3d 769, 774 (7th Cir. 2008)). This is especially true given that the April 11, 2014 Letter conveyed information that plaintiff gained through her employment. Had plaintiff not been a teacher, it is unlikely that she would have had the requisite knowledge to contest the District's implementation of IEPs and other procedures. "Accordingly, [plaintiff] was only able to complain about [defendants'] acts because of the information she obtained as a public employee." *Kelly*, 2012 WL 1077677, at *14.

Other courts have correctly found that similar correspondence implicated public duties and were authored by public employees, and not private citizens. *See Rodriguez v. Int'l Leadership Charter Sch.*, No. 08-CV-1012 (PAC), 2009 WL 860622, at *4 (S.D.N.Y. Mar. 30, 2009) ("As a teacher assigned to special needs students, [the plaintiff] had a professional duty to attend to her students' educational needs. When she complained . . . to the Department of Education that these needs were not being met, she did so in an official capacity, not as a private citizen on a matter of public interest."); *Nadolecki*, 2016 WL 4768823, at *7 ("Further, even if [the plaintiff's] communications were not made through official channels, or up the chain of

command, courts have dismissed similar claims so long as the teachers were talking about the educational needs of the students they teach."); *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009) (" In our cases applying *Garcetti,* we have consistently held that a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command."); *see also Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 64 (2d Cir. 2010) (holding that "a police officer speaking to a public official about his concerns over public safety issues is speaking in his capacity . . . as a police officer," and not as a citizen).

\*\*\*

For these reasons, the Court concludes, as a matter of law, that neither plaintiff's e-mails nor the April 11, 2014 Letter are protected speech under the First Amendment. As a result, summary judgment is warranted in defendants' favor on plaintiff's Section 1983 claim because plaintiff has failed to satisfy the first prong of her *prima facie* retaliation case.[6] *See Sousa*, 578 F.3d at 170.

B. New York State Law Claim

Plaintiff also asserts a claim under New York Civil Service Law § 75-b. Having determined that the federal Section 1983 claim does not survive summary judgment, the Court concludes, in its discretion, that retaining jurisdiction over the state law cause of action is unwarranted. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at \*5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*,

---

[6] Because speech as an employee is not protected, the Court need not determine whether plaintiff's correspondence involved a matter of public concern or conduct the *Pickering* balancing analysis. *See, e.g.*, *Jackler*, 658 F.3d at 237 ("If the employee did not speak as a citizen, the speech is not protected by the First Amendment, and no *Pickering* balancing analysis is required.").

Similarly, defendants argue that summary judgment is warranted on the ground that there is no causal connection between the April 11, 2014 Letter and the decision to place plaintiff on home leave and issue the Counseling Memo. They assert that there is no evidence that the defendants were aware of the April 11, 2014 Letter prior to plaintiff's May 2, 2014 placement on home leave because it is undisputed that (1) plaintiff sent that correspondence to an address not associated with any District property; and (2) there is no documentary support for her contention that she e-mailed a copy to the District. In addition, defendants contend that the investigation of plaintiff constituted an intervening cause sufficient to break the link between the April 11, 2014 Letter and the alleged retaliation. However, because the Court has already determined that the April 11, 2014 Letter is not protected speech, it need not, and does not, address these arguments.

No. 99-CV-3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Thus, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claim given the absence of any federal claim that survives summary judgment, and it dismisses plaintiff's state law claim without prejudice to re-filing in state court.

### IV. CONCLUSION

For the reasons set forth herein, defendants' motion for summary judgment is granted with respect to plaintiff's Section 1983 claim, and the Court declines, in its discretion, to exercise supplemental jurisdiction over plaintiff's New York state law claim, which it dismisses without prejudice to re-filing in state court. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

---

JOSEPH F. BIANCO
United States District Judge

Dated: June 5, 2017
      Central Islip, New York

\*\*\*

Plaintiff is represented by Alan E. Wolin of Wolin & Wolin, Esqs., 420 Jericho Turnpike Suite 215, Jericho, New York 11753. Defendants are represented by Gerald Stephen Smith of Silverman and Associates, 445 Hamilton Avenue, Suite 1102, White Plains, New York 10601.